**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No.: 22-CR-331 (BAH)** |
| **MARCO WILSON,** | |
| **Defendant.** | |

<u>**UNITED STATES' OMNIBUS PRE-TRIAL MOTION IN LIMINE**</u>

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to admit intrinsic evidence and other crimes evidence pursuant to Federal Rule of Evidence 404(b). Additionally, the government hereby provides notice that if the defendant testifies at trial, it will seek to impeach him with the prior convictions detailed herein pursuant to Federal Rule of Evidence 609.  In support of its Motion, the government relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this motion.

<u>**FACTUAL BACKGROUND**</u>

<u>***The Defendant's Arrest***</u>

On Wednesday September 28, 2022, at approximately 5:33 p.m., Metropolitan Police Department (MPD) Officers with the 6th District were conducting focused patrol in the 3300 block of D Street, S.E. Officers observed an individual wearing a black hoodie and jeans, later identified as Marco Wilson, congregating with a group of individuals around a car parked outside of 3327 D Street, S.E. Wilson was smoking a rolled lit cigarette which had distinct, thick, white smoke and was emanating an odor consistent with burnt marijuana.

Upon noticing the presence of marked MPD vehicles driving down the block, Wilson began to separate himself from the group of individuals he was with. Through training and experience, the officers knew that individuals in possession of illegal contraband frequently separate themselves from groups of individuals upon noticing the presence of the police.

Officers exited their vehicle to investigate the consumption of marijuana on public space, which is illegal in the District of Columbia. As officers began to approach Wilson, he left the public sidewalk and walked to sit on the stairs to the entrance of 3327 D St., S.E. He tossed the lit cigarette.

Officers approached Wilson and asked him to stand in order to investigate the public consumption of marijuana. He refused. The officers pulled Wilson up to stand, and as they did Sergeant Jendy Olivo observed a clear plastic bag with a white rock-like substance protruding from Wilson's front sweatshirt pocket, which Sgt. Olivo instantly recognized as illegal narcotics.



Almost immediately thereafter, as Officers began to pat Wilson down, Sgt. Olivo observed the black grip of a handgun in Wilson's waistband. Officers then placed Wilson in handcuffs without incident.

2





Officers photographed the firearm and removed it from Wilson's waistband. The recovered firearm was discovered to be a Taurus G3C 9 mm handgun. The firearm had one round in the chamber and twelve rounds in the magazine. Officers canvassed for the lit cigarette that was thrown by Wilson but were unable to locate it on the scene.

During a search incident to arrest of Wilson, Officer Andrew Renneisen recovered an additional magazine containing twelve rounds of ammunition and two small round white pills from Wilson's right front pants pocket. The additional magazine also fit into the recovered firearm and

contained an additional twelve rounds. Officer Renneisen recovered $2,103.00 of U.S. currency and a set of keys from Wilson's left front pants pocket. Additionally, Officer Renneisen recovered a black electronic scale with white residue from Wilson's front sweatshirt pocket.



The total amount of white rock-like substance recovered was 61.4 grams. The substance was sent for chemical analysis to the Drug Enforcement Agency. The substance was determined to be N, N-Dimethylpentylone, a Schedule I controlled substance.[1]

At the time of his arrest, Mr. Wilson had previously been convicted of crimes punishable by more than a year imprisonment in the following cases:

| Charge/Court | Disposition Date and Sentence |
|---|---|
| Possession with Intent to Distribute Cocaine/Transporting a Handgun – CT180924X – PG County | 4/5/2019 – 20 years/15 suspended |
| Assault with a Dangerous Weapon/Possession with Intent to Distribute PCP – 2007-CF3-25612 – DC Super Ct | 4/24/2008 – 92 months |
| Attempted Possession with Intent to Distribute Cocaine – 2005-FEL-1731 – DC Super Ct | 8/30/2006 – 20 months |

---

[1] The Government anticipates proving at trial that this drug is commonly referred to as "Boot."

***The Defendant's Text Messages***

On October 12, 2022, Judge Upadhyaya signed a search warrant authorizing a search of the content of a cell phone seized from Mr. Wilson's person at the time of his arrest. *See* 22-SW-322. A review of the extracted data from the phone showed numerous text exchanges indicative of drug distribution that the government intends to introduce. Some of those conversations, which are representative of the relevant messages on the phone, are excerpted below.

For example, a few days before he was arrested, Mr. Wilson had the following text exchange with a number ending in -8428 regarding his sale prices for narcotics:

| Sender | Date | Time | Content |
|--------|------|------|---------|
| -8428 | 9/22/2022 | 9:16:05 a.m. | I need a oz later.. |
| -8428 | 9/22/2022 | 9:16:13 a.m. | How much |
| Wilson | 9/22/2022 | 9:16:22 a.m. | 225 |
| -8428 | 9/23/2022 | 7:54:53 a.m. | Damn I need that zip I got a huge play for it and I'ma b getting one ery other day now..let me owe you 25…I got 200..need that zip now |
| -8428 | 9/23/2022 | 7:54:57 a.m. | Gm |
| Wilson | 9/23/2022 | 7:56:49 a.m. | Don't have it right now |
| Wilson | 9/23/2022 | 8:01:10 a.m. | Got boot but not a o |
| Wilson | 9/23/2022 | 8:29:34 a.m. | I'm Here |
| -8428 | 9/23/2022 | 8:31:22 a.m. | 10 min…how much 30? |
| Wilson | 9/23/2022 | 8:33:49 a.m. | 35 for a 3.5 |

A few weeks before his arrest, in a conversation with a number ending in -9948, Mr. Wilson had the following exchange regarding another arranged sale of narcotics:

| Sender | Date | Time | Content |
|--------|------|------|---------|
| Wilson | 9/11/2022 | 2:14:00 p.m. | Don't worry about that champ I got you imma give you 5 gram imma keep adding on what you spend because I still owe yu so I'm going to give you 2 extra grams to pay that bill |
| -9948 | 9/11/2022 | 2:14:30 p.m. | My man |
| Wilson | 9/11/2022 | 2:17:40 p.m. | The only thing is I won't have a car till tonight |
| Wilson | 9/11/2022 | 2:17:53 p.m. | I'm down on d st |
| Wilson | 9/11/2022 | 2:18:01 p.m. | 34th and d st[2] |

Three days before his arrest, in a conversation with a number ending in -2376, Mr. Wilson had the following exchange regarding another sale of narcotics:

| Sender | Date | Time | Content |
|--------|------|------|---------|
| -2376 | 9/25/2022 | 11:39:34 a.m. | Salaam Waylaikum Marco u must didn't hear tht I had $35 & not $25 ahki… |
| -2376 | 9/25/2022 | 11:39:43 a.m. | $35 |
| Wilson | 9/25/2022 | 11:40:18 a.m. | Yeah  I gave Her 3.5 bro |
| Wilson | 9/25/2022 | 11:40:28 a.m. | Allahi |
| Wilson | 9/25/2022 | 11:52:45 a.m. | Ock is everything alright I don't like to be in the middle of these type of situation |
| -2376 | 9/25/2022 | 11:58:44 a.m. | Not really becuzz wen I came n,& dropped it on the my scale… |
| Wilson | 9/25/2022 | 11:59:38 a.m. | Bro one thing I don't do is play with ppls money I gave her exactly 3.6 |
| Wilson | 9/25/2022 | 12:01:01 p.m. | I really don't know what to say  but you know how handle business and you is Muslim your property is sacred no matter what it is |
| Wilson | 9/25/2022 | 12:01:35 p.m. | This type [expletive] cost problems ock |

---

[2] This address is approximately half-a-block from where the defendant was arrested.

| | | | |
|---|---|---|---|
| -2376 | 9/25/2022 | 12:08:335 p.m. | Ohkay I got it now ahki was scaling it wrng Marco… |

Several weeks before his arrest, the defendant had the following exchange with a number ending in -0711 regarding another sale of narcotics:

| Sender | Date | Time | Content |
|---|---|---|---|
| -7749 | 8/31/2022 | 10:24 p.m. | Wassup brodie can uu meet me at the Valero at 12 Imma Have 100 For Some Boot |
| -7749 | 8/31/2022 | 10:24 p.m. | I'm up Rhode island Ave station now boutta be on my way to that side |
| Wilson | 8/31/2022 | 10:38 p.m. | Bro I need that 100 so make sure you fuck with me imma give you more than 10 gram I got you big boy |
| Wilson | 9/1/2022 | 12:03 a.m. | What's up you called and didn't say nothing |
| Wilson | 9/1/2022 | 12:04 a.m. | What's up ?( |
| -7749 | 9/1/2022 | 12:04 a.m. | I'm at McDonald's |
| Wilson | 9/1/2022 | 12:05 a.m. | 3336 d st[3] |
| Wilson | 9/1/2022 | 12:05 a.m. | Straight up the ave |
| -7749 | 9/1/2022 | 12:05 a.m. | Bet coming right now |
| Wilson | 9/1/2022 | 12:05 a.m. | Straight up the ave |
| -7749 | 9/1/2022 | 12:05 a.m. | Bet coming right now |
| Wilson | 9/1/2022 | 12:05 a.m. | My man |
| -7749 | 9/1/2022 | 12:05 a.m. | Onda scooter |
| Wilson | 9/1/2022 | 12:05 a.m. | Bet |
| Wilson | 9/1/2022 | 12:05 a.m. | I'm waiting |
| -7749 | 9/1/2022 | 12:17 a.m. | I'm here |
| -7749 | 9/1/2022 | 12:17 a.m. | I got 160 |

And in a conversation with a number ending in -0499 that continued into the day of his arrest, Mr. Wilson had the following exchanges regarding another arranged sale of narcotics:

| Sender | Date | Time | Content |
|---|---|---|---|
| -0499 | 9/26/2022 | 9:17:36 | You around boo I wAnt the same thing I got frm yesterday 10gass 10boot but I wanna hold time 2ma or Wednesday if you can |
| Wilson | 9/26/2022 | 9:18:05 | Give me a minutes |

[3] This address is across the street from where the defendant was arrested.

7

| Sender | Date | Time | Content |
|--------|------|------|---------|
| -0499 | 9/28/2022 | 1:51:41 p.m. | Can you Come seeme |
| Wilson | 9/28/2022 | 1:52:20 p.m. | What you trying to get so I can have it ready |
| -0499 | 9/28/2022 | 1:52:44 p.m. | I wanna hold a tre 5 nd 5boot nd I'll give you a $20 or $25 Friday or Saturday |
| -0499 | 9/28/2022 | 1:52:48 p.m. | If you can |
| Wilson | 9/28/2022 | 1:53:20 p.m. | I can do it but you have to wait till tonight |
| -0499 | 9/28/2022 | 1:54:08 p.m. | Yikes |
| -0499 | 9/28/2022 | 1:54:23 p.m. | I'm jyi geeking to smoke now but no Biggs |

In a different text exchange, the defendant discusses his acquisition of the very firearm which was found on his person:

| Sender | Date | Time | Content |
|--------|------|------|---------|
| Wilson | 8/31/2022 | 8:06:33 a.m. | Everything is good just got Taurus G2c 9x19 |
| -0908 | 8/31/2022 | 8:07:07 a.m. | Ok |
| Wilson | 8/31/2022 | 8:07:08 a.m. | G3c 9x19 |
| -0908 | 8/31/2022 | 8:10:57 a.m. | Cool |

## **ARGUMENT**

## I.   THE DEFENDANT'S PRIOR DRUG CONVICTION AND TEXTS REGARDING DRUG DISTRIBUTION ARE ADMISSIBLE UNDER 404(B).

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity

purpose, including – but not limited to – motive, intent, plan, knowledge, and absence of mistake. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)). As the D.C. Circuit has instructed, Rule 404(b) is a rule of "inclusion rather than exclusion." *Bowie*, 232 F.3d at 929.  Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character."  *Bowie*, 232 F.3d at 929-30 (*quoting United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

There is a two-pronged test for determining whether evidence of prior crimes is admissible under 404(b). *First*, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted).  *Second*, the evidence is subject to the balancing test of Federal Rule of Evidence 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value.  *Id*.  Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger substantially outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in

original).

Admission of 404(b) evidence is permitted in the Government's case-in-chief, regardless of whether that issue is even disputed by the defense. *See Bowie*, 232 F.3d at 932. Indeed, even "a defendant's offer to stipulate to an element of an offense does not render the government's other crimes evidence inadmissible under Rule 404(b) to prove that element, even if the defendant's proposed stipulation is unequivocal, and even if the defendant agrees to a jury instruction of the sort mentioned in our earlier opinion." *Crowder II*, 141 F.3d at 1209.

Finally, in a criminal case, the prosecution is required to "provide reasonable notice" to the defense of 404(b) evidence it intends to offer at trial, including "the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." This motion provides the required notice.

### A. The Defendant's 2019 Drug Conviction and Text Messages Are Relevant to His Knowledge, Intent, and Motive.

The Government intends to offer into evidence the defendant's prior 2019 Maryland conviction for Possession with Intent to Distribute Cocaine and his text messages indicative of drug distribution. To convict the defendant of knowing and voluntary possession of the controlled substances in this case, and to prove his intent to sell them, the government is entitled to present evidence regarding the defendant's prior possession of controlled substances. *See, e.g. United States v. McCarson*, 527 F.3d 170, 174 (D.C. Cir. 2008) (prior convictions for possessing firearms and selling crack cocaine admissible to prove knowledge and intent); *United States v. Douglas*, 482 F.3d 591, 597 (D.C. Cir. 2007); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008); *United States v. McGill*, 815 F.3d 846, 884 (D.C. Cir. 2016) (same); *United States v. Watson*, 894 F.2d 1345, 1348-49 (D.C. Cir. 1990) (possession of cocaine subsequent to possession charged in

indictment relevant to show defendant's knowledge of cocaine distribution business); *United States v. Moore*, 732 F.2d 983, 987-92 (D.C. Cir. 1984) (prior pattern of drug dealing similar to crimes charged relevant to show intent and admitted over rule 404(b) challenge).

The Rule 404(b) evidence that the Government seeks to admit at trial is the same sort of other crimes evidence for which admission at trial has been upheld in the past. For example, in *Crowder II*, other narcotics evidence was admitted to show the defendant's knowledge, intent, and motive in the possession of the narcotics at issue in the case. 141 F.3d at 1208. The D.C. Circuit instructed:

> A defendant's hands-on experience in the drug trade cannot alone prove that he possessed drugs on any given occasion. But it can show that he knew how to get drugs, what they looked like, where to sell them and so forth. Evidence of a defendant's experience in dealing drugs — evidence that is, of his 'bad acts' — thus may be a 'brick' in the 'wall' of evidence needed to prove possession. *See* Fed. R. Evid. 401, advisory committee notes.

*Id.* at 1209 n.5; *United States v. Thorne*, 18-CR-389 (BAH), 2020 WL 122985 *11 (D.D.C. Jan. 10. 2020).

Consistent with *Crowder II*, the D.C. Circuit has a longstanding and consistent rule of allowing the admission of "other crimes" evidence relating to the possession of drugs under Rule 404(b). *See, e.g.*, *United States v. McCarson*, 527 F.3d 170, 174 (D.C. Cir. 2008) (finding two prior PWID convictions and two firearm convictions "were not only relevant; they were also highly probative of both [the defendant's] intent to distribute the crack cocaine and his constructive possession of the gun and the drugs") (emphasis added); *Pettiford*, 517 F.3d at 590 (finding that prior conviction for distributing cocaine from his car "made it substantially more likely that [the defendant] knew that there was (and intended that there be) crack in the console of the Ford —

and that he intended to distribute that crack"); *United States v. Douglas*, 482 F.3d 591, 597 (D.C. Cir. 2007) ("Evidence that [the defendant] previously possessed and distributed crack cocaine to an undercover police officer 'has a tendency to make' it 'more probable,' Fed. R. Evid. 401, both that he knew the nature of the substance . . . and that he intended to distribute it"); *United States v. Burch*, 156 F.3d 1315, 1324 (D.C. Cir. 1998) (finding evidence of prior arrest and conviction for attempted possession with the intent to distribute on the same block was relevant to show knowledge and intent); *United States v. Latney*, 108 F.3d 1446, 1448 (D.C. Cir. 1997) (finding evidence of defendant's other possession of crack cocaine admissible in a trial charging the defendant with the aiding and abetting of distribution of crack); *United States v. Washington*, 969 F.2d 1073, 1080-81 (D.C. Cir. 1992) (finding 404(b) evidence of defendant's prior charges of distribution and possession with intent to distribute narcotics to be admissible to demonstrate intent, knowledge, plan, and absence of mistake); *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982) (finding evidence of defendant's prior drug trafficking admissible in PWID trial to show intent, preparation, plan and knowledge); *United States v. Johnson*, 40 F.3d 436, 441 n.3 (D.C. Cir. 1994) (holding that it was proper to admit evidence of a prior drug transaction as bearing on intent to possess narcotics).

    The defendant was found in possession of a significant quantity of narcotics on his person, specifically N-Dimethylpentylone.  The government will need to prove at trial that the defendant's possession of narcotics was for the purposes of distribution rather than personal use.  The text message evidence does just that.  The text messages are close in time to the defendant's arrest; within days or weeks.  One of the text messages with the -0499 number even demonstrates the

defendant arranging a sale of "boot" on the very night he was arrested.[4]   The text messages indicate a knowledge of the substance that the defendant was found with, specifically "boot." Further they indicate the defendant's knowledge of the price of various units of "boot" and that the defendant markets and sells "boot" to many different people. Multiple different customers message the defendant inquiring about pricing and quantity. Further, these messages indicate that the defendant engages in drug distribution in the same area in which he was arrested.

The analysis with respect to the 2019 Maryland conviction for Possession with Intent to Distribute Cocaine is similar. The government plans to admit evidence of the defendant's prior conviction with portions from the plea transcript in that case, where the defendant acknowledges the factual predicate underlying the conviction.[5] The D.C. Circuit has generally "affirmed the admission of prior drug trafficking convictions absent some 'compelling or unique evidence of prejudice.'" *Thorne*, 2020 WL 122985, at *11 (quoting *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995). And the occasions where the Circuit has disapproved of such evidence has involved much older convictions. *See United States v. Sheffield*, 832 F.3d 296, 307-08 (D.C. Cir. 2019). Here, the defendant was convicted in 2019 and released from custody in 2021. There is no

---

[4] The government notes that this text in particular is "intrinsic," rather than "extrinsic" evidence. *See Bowie*, 232 F.3d at 929. The government can credibly argue that the defendant possessed the substance here with the intent to distribute some of it to the owner of the -0499 number. Therefore, this evidence—like the evidence described in Section II of this motion—is better understood as "part of the charged offense," rather than a prior bad act. *See id*. Regardless, the text would be admissible even if the court concluded it was extrinsic evidence.

[5] The government has ordered, but not yet received a copy of this transcript. To the extent this motion is still pending upon the government's receipt of the transcript, the government will provide the Court with the exact portions of the transcript that it seeks to introduce.

concern of staleness with regards to the defendant's knowledge or intent to both of which the conviction is highly probative.

**B.   The Probative Value is Not Substantially Outweighed by Undue Prejudice.**

Evidence admissible under Rule 404(b) is subject to the restrictions of Rule 403.  *See United States v. Moore*, 732 F.2d 983, 987 (D.C. Cir. 1984).  In this case, the highly probative value of the Government's proffered 404(b) evidence is not substantially outweighed by potential unfair prejudice to the defendant.  "The prejudice that the court must assess is the prejudice that lies in the danger of jury misuse of the evidence." *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995). "While there is always a risk that jurors will misuse evidence of this type to veer into an impermissible propensity inference, this risk, absent 'compelling or unique evidence of prejudice'…'cannot give rise to a per se rule of exclusion.'" *United States v. Harris*, No. CR 19-358 (RC), 2020 WL 6484311, at *3 (D.D.C. Nov. 4, 2020) (quoting *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007)).

There is no compelling or unique evidence of unfair prejudice in this case, let alone any that could not be cured by a limiting instruction. The evidence put forth to the jury on the defendant's prior conviction  possession will be limited in nature – consisting solely of the prior certified conviction and limited excerpts from the plea hearing transcript regarding the facts underlying the prior conviction.  And the government is limiting its presentation of the defendant's prior convictions.  Despite the fact that the defendant has multiple prior drug convictions, the Government will only introduce evidence related to the 2019 conviction.  The limited scope of the proffered evidence will minimize any risk of the jury misusing the evidence or drawing an impermissible inference.  Similarly, the text messages that will be presented are narrowly focused

on the key issues and do not include anything that could be considered unfairly prejudicial.  In other words, the text message evidence will not suggest that the defendant is involved with or committing crimes more serious than that with which he is charged.

Moreover, any risk of unfair prejudice can easily be cured with a limiting instruction by the court "instructing the jury to consider the evidence only for its proper purpose." *Mitchell*, 49 F.3d at 777; see also *McCarson*, 527 F.3d at 174 ("Where, as here, there is no compelling or unique evidence of prejudice, we deem such a limiting instruction sufficient to protect a defendant's interest in being free from undue prejudice by virtue of his prior conviction(s) being put into evidence.") (internal citations omitted).

The government has demonstrated permissible non-propensity purposes for the prior conviction and text message evidence, and its high probative value is not substantially outweighed by potential unfair prejudice to the defendant. Accordingly, the government should be allowed to use the aforementioned evidence pursuant to Rule 404(b).

## II.     THE DEFENDANT'S TEXT MESSAGES REGARDING THE FIREARM ARE ADMISSIBLE AS INTRINSIC EVIDENCE OR UNDER 404(B).

Evidence is relevant if it makes a fact of consequence in the trial more or less probable than it would be without the evidence.  Fed. R. Evid. 401. And relevant evidence is generally admissible. Fed. R. Evid. 402. However, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403.  As noted above, under Federal Rule of Evidence 404(b), extrinsic evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including, but not limited to, motive, intent, plan, knowledge, and absence of mistake. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)).

Alternatively, when evidence is offered as direct evidence of a fact in issue and not as circumstantial evidence requiring an inference as to the character of the accused, the evidence is "intrinsic," rather than "extrinsic," and the Court need not engage in a Rule 404(b) analysis. *See United States v. Badru*, 97 F.3d 1471, 1474-75 (citing 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239, at 450 (1978)). "In other words, if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic. In addition, some uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." *Bowie*, 232 F.3d at 929.

The government intends to offer as intrinsic evidence, the defendant's text message discussing his acquisition of the firearm which was found on his person. The defendant is charged with the unlawful possession of a Taurus G3C, 9mm semi-automatic firearm. ECF No. 14. To prove this offense, the government will need to demonstrate that the defendant's possession of the firearm was knowing and not inadvertent or accidental. The text message at issue, where Mr. Wilson informs an acquaintance that he obtained a Taurus G3C 9mm firearm is direct evidence of his knowing possession of that specific firearm. In other words, the fact that Mr. Wilson informed another individual that he had obtained this specific firearm tends to suggest that his possession of that firearm on the date of this offense was knowing and intentional.

In *United States v. Benford*, the Eleventh Circuit affirmed the admission of similar intrinsic evidence. 479 Fed. Appx. 186 (11th Cir. 2011). There, the defendant sought exclusion under Rule 404(b) of a photograph from social media of the defendant holding the same firearms he was charged with possessing. *Id*. at 191-92. The Court held that the "photographs were not extrinsic evidence" because "this evidence was directly probative of [the defendant's] knowing possession

of the very weapons charged in the indictment." *Id.* at 191-92; s*ee also United States v. Alexander*, 356 U.S. App. D.C. 299, 309-10, 331 F.3d 116, 126-27 (2003) (finding 911 call indicating that defendant had a firearm approximately 20 to 30 minutes before the arrest for illegal possession of a firearm was intrinsic admissible evidence on a felon-in-possession charge).  So too here.

Less than a month before he was found illegally possessing a Taurus G3C, 9mm semi-automatic firearm in his waistband, the defendant told someone he had "just got" that specific firearm (a "Taurus" "G3c 9x19").  This text message demonstrates the defendant's knowing possession of this specific firearm and therefore is "evidence of an act that is part of the charged offense" and is admissible as intrinsic evidence.  *Bowie*, 232 F.3d at 929.  Even if the Court were to find these text messages to be extrinsic evidence, they remain admissible.  The government has properly provided notice of its intent to admit this evidence in advance of trial, and the text messages easily meet the two-pronged test for admissibility under Rule 404(b).

*First*, the text messages are "probative of a material issue other than character." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990) (citation omitted).  These messages bear on the defendant's knowledge of the firearm he possessed, lack of mistake or accident, and his motive and intent to possess the firearm in furtherance of drug trafficking.  As discussed above, the fact that the defendant exchanged text messages indicating that he had obtained this specific firearm demonstrate that his possession on a later date of that same firearm was knowing and intentional. The text messages undermine any argument that this firearm was accidentally in the defendant's possession or—as is regularly argued in this jurisdiction—that the firearm was planted by officers to justify an arrest.  Even if the defendant chooses not to pursue a defense of inadvertence or evidence manufacture, the government bears the burden of proving this charge beyond a

reasonable doubt.  The defendant's "choice not to put at issue an element of the charged offense is irrelevant to the admissibility of evidence offered to prove that element." *United States v. McCarson*, 527 F.3d 170, 173 (2008).  As the Supreme Court has explained, "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it."  *Old Chief v. United States*, 519 U.S. 172, 186-89, (1997).  Indeed, even when defense attorneys do not explicitly make an argument or imply that there was police misconduct, members of the jury often can still worry about conspiracy theories or concerns of police potentially planting evidence.  The government must have the ability to address such concerns and these text messages do just that.

The text messages are also relevant to prove that the defendant used this firearm in furtherance of drug distribution.   At around the same time the defendant was texting an acquaintance regarding his firearm on August 31, he was sending other text messages indicating that he was engaged in drug distribution. For example, on August 29, 2022, at 5:31 PM, a number ending in -1369 texted the defendant asking "U got some boot."  That same day, at 6:36 PM, another individual with a phone number ending in -0711 messaged the defendant asking "You got boot."  On August 31, 2022 at 2:20 PM, an individual with a phone number ending in -2487 texted the defendant "I got 15 cash 40 all together."  The defendant responded "Ok."  On August 31, 2022 at 10:24 PM, an individual with a phone number ending in -7749 texted the defendant the following: "Wassup brodie can uu meet me at the Valero at 12 Imma Have 100 For Some Boot."  The defendant responded: "Bro I need that 100 so make sure you [expletive] with me imma give you more than 10 gram I got you big boy."  The fact that the defendant was acquiring a firearm

while actively engaged in drug distribution suggests his motive and intent in possessing the firearm.  In other words, it suggests that the defendant obtained this firearm to facilitate his ongoing drug distribution.

*Second*, any unfair prejudice from the introduction of the evidence does not substantially outweigh its probative value.  *Id*.  "The prejudice that the court must assess is the prejudice that lies in the danger of jury misuse of the evidence." *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995). "While there is always a risk that jurors will misuse evidence of this type to veer into an impermissible propensity inference, this risk, absent 'compelling or unique evidence of prejudice'…'cannot give rise to a per se rule of exclusion.'" *United States v. Harris*, No. CR 19-358 (RC), 2020 WL 6484311, at *3 (D.D.C. Nov. 4, 2020) (quoting *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007)).

There is no compelling or unique evidence of unfair prejudice in this case, let alone any that could not be cured by a limiting instruction.  The text messages that will be presented are squarely focused on one key issue – the acquisition of the specific firearm the defendant is charged with possessing.  The text messages do not veer off into any other side issues or otherwise include anything that could be considered unfairly prejudicial.  For example, these messages do not suggest that the defendant used the firearm to commit other uncharged crimes.  Rather, the text messages merely discuss the very firearm that jury will already be focused upon.  There is no danger of unfair prejudice here.

## III.   SHOULD THE DEFENDANT TESTIFY, HE CAN BE IMPEACHED WITH HIS PRIOR CONVICTIONS.

Rule 609 of the Federal Rules of Evidence allows "for the admission of a defendant's prior convictions for purposes of impeachment, so long as the 'crime . . . was punishable by death or by

imprisonment for more than one year' (that is, it was a felony), and 'the probative value of the evidence outweighs its prejudicial effect." *United States v. Ford*, 15-cr-25 (PLF), 2016 WL 259640, at *7 (D.D.C. Jan. 21, 2016) (quoting *United States v. Moore*, 75 F. Supp. 3d 444, 453 (D.D.C. 2014) and Fed. R. Evid. 609(a)(1)). In addition, the Rule requires the admission of convictions, even for crimes where the punishment is less than one year if the conviction for the crime required proof of "a dishonest act or false statement." Fed. R. Evid. 609(a)(2). The Rule also sets a higher bar for felonies where "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). In those instances, admission is still appropriate if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). As our Court of Appeals has observed, Rule 609 "stresses admissibility." *United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980). "Courts should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary." *Id.*

If the defendant testifies, the government should be permitted to impeach him with his prior felony convictions for Possession with Intent to Distribute and Transportation of a Handgun on a Roadway (CT180924X) and Possession with Intent to Distribute PCP (2007-CF2-25612). With respect to each of these convictions, the defendant was released within the ten-year threshold for admissibility. Thus, the "more stringent limitations" that "govern the use of prior convictions that are more than ten years old" and require a finding that the probative value *substantially* outweighs its prejudicial effect are inapplicable. *Moore*, 75 F. Supp. 3d at 453; Fed. R. Evid. 609(b).   In this

case, the prior conviction must be admitted for impeachment if the probative value of the conviction outweighs any prejudicial effect. Fed. R. Evid. 609(a)(1)(B).

In *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983) (en banc), the D.C. Circuit conducted an exhaustive review of the legislative history of Rule 609 and noted that "Congress believed that all felonies have some probative value on the issue of credibility." The D.C. Circuit concluded as a result that that "all felony convictions are probative of credibility to some degree." *Id.* at 1062 (emphasis omitted).

Should the Court permit the 2019 conviction for Possession with Intent to Distribute as admissible Rule 404(b) evidence, this Court need not even conduct a prejudice analysis for that conviction. *United States v. Ford*, 2016 WL 259640, at *7-9 (D.D.C. Jan. 21, 2016); *see e.g.*, *Moore*, 75 F. Supp. 3d at 456; *United States v. Chauncey*, 420 F.3d 864, 874 (8th Cir. 2005) ("Here, the prior conviction already was admitted under Rule 404(b), and the danger of unfair prejudice by repetition of the evidence was negligible."); *United States v. Lattner*, 385 F.3d 947, 961 (6th Cir. 2004) ("[T]he prejudicial effect of the evidence was minimal, as the prosecution had already properly introduced, under [Rule] 404(b), evidence of [defendant's] prior involvement in drug transactions."). However, should the Court deny the government's motion to admit evidence regarding that conviction as Rule 404(b) evidence, for the reasons discussed below, the government should nevertheless be permitted to impeach the defendant with both his 2019 conviction for Possession with Intent to Distribute and Transportation of a Handgun on a Roadway and the 2008 conviction for Possession with Intent to Distribute PCP because their probative value outweigh any prejudicial effect.

In assessing whether the probative value of a prior conviction outweighs its prejudicial effects, the D.C. Circuit has considered the following factors: 1) the nature of the crime, 2) the time of the conviction, 3) the similarity of the past crime to the charged crime, 4) the importance of the defendant's testimony, and 5) the degree to which the defendant's credibility is central to the case. *United States v. Jackson*, 627 F.3d 1198, 1210 (D.C. Cir. 1980).

*First*, with regard to the nature of the crimes, although none of the crimes involve dishonesty, they are types of crimes that courts have deemed impeachable convictions. *See, e.g.*, *United States v. Lewis*, 626 F.2d 940, 946–951 (D.C. Cir. 1980) (affirming in drug prosecution impeachment under Rule 609 with a prior drug conviction); *Moore*, 75 F. Supp. 3d at 455 (admitting unlawful possession of a firearm conviction); *United States v. Jefferson*, 2021 WL 6196988, at *5 (D.D.C. Dec. 30, 2021) (same); *United States v. Giles*, 496 F.Supp.3d 21, 31 (D.D.C. 2020) (admitting evidence that defendant was convicted of "gun-related felonies" but not allowing the specific names of the crimes).

*Second*, the close proximity of at least the 2019 convictions weighs heavily in favor of admission. The defendant was sentenced for the Maryland Possession with Intent to Distribute Cocaine and Transportation of a Handgun on a Roadway in 2019 and was released from incarceration approximately one year before the instant offense.

*Third*, with regard to the degree to which the prior conviction is similar to the crime at issue, while most courts have found that same-crime convictions may be prejudicial, that fact is not dispositive. *See United States v. Isaac*, 449 F.2d 1040, 1043 (D.C. Cir. 1971) (allowing impeachment with one, but not two, prior convictions of the same crime); *Jefferson*, 2021 WL 6196988, at *5 (admitting prior conviction similar to charged conduct given other factors).For

example, one D.C. Circuit panel noted that close similarity may actually increase probative value under certain circumstances. *Lewis*, 626 F.2d 940. In *Lewis*, while on trial for multiple drug distribution counts, the defendant testified that he had never sold drugs and tried to convince the jury he was a "stranger to the use and sale of illegal drugs." *Id.* at 947. On cross-examination, the defendant was impeached by his admission that he had been convicted previously for the distribution of drugs. *Id.* at 948. The trial judge found that the denials "made his credibility an even more vital consideration in the trial" and added support for the judge's ruling admitting the prior conviction. *Id.* The D.C. Circuit concluded the admission of the prior conviction was reasonable noting the similarity between the prior conviction and crime at issue "does not render the prior conviction inadmissible" and "may even, as the judge found here, increase its probative value." *Id.* at 950. The Court went on to say a limiting instruction should be provided when the conviction is admitted and again in the final instructions. *Id.*

Here, the defendant may make similar denials that would render the similar nature of the prior gun and drug convictions more probative to the issue of his credibility. Even absent these denials, the convictions should be admissible given the strength of the other factors and the ability to provide multiple limiting instructions as in *Lewis*. Accordingly, this factor weighs in favor of admission.

*Finally*, because the importance of the defendant's testimony and the degree to which the defendant's credibility is central to the case, both weigh in favor of admitting the two prior convictions. As the D.C. Circuit has noted, "it is unfair and misleading to a jury, when credibility is at issue, to refuse to admit relevant evidence that is directly probative on that issue." *Id.* A defendant's testimony has a significant effect upon a juror's evaluation of the crime and any

defenses. *See Moore*, 75 F. Supp. 3d at 455 ("what Moore might say in his own defense—e.g., the gun wasn't mine, the drugs were for personal use—could play a significant role in the jury's verdict. Hence, the probative value of Moore's prior convictions is quite high."); *Jackson*, 627 F.3d at 1209-10 ("had Jackson chosen to take the stand his credibility would have been centrally in issue as it related to his 'flim flam' defense"). In this case, should he choose to testify, the defendant's testimony, and therefore his credibility, would likely be central to his defense.  These offenses require proof of intent and motive—the best evidence of which is in the defendant's mind. In other words, the defendant is likely to offer evidence regarding his purported lack of knowledge, intent, and motive, which the government will need to rebut.  The two prior convictions provide the jury with the necessary background and context to measure the defendant's credibility.  Each tells the jury something slightly different about his credibility as a witness or, as one Court put it, "[f]rom the jury's point of view … each conviction knocks a brick from [the defendant's] credibility wall." *Moore*, 75 F. Supp. 3d at 456

Taken together, the five *Jackson* factors indicate the probative value of the prior convictions outweighs their prejudicial effects. The Maryland gun and drug convictions are recent and their similarity to the felon in possession charge may actually increase their probative value. Moreover, because the defendant's intent is centrally at issue in this case and must necessarily be proven by circumstantial evidence, the jury is entitled to have all of the facts relevant to weighing his credibility.  Any prejudice can be cured by an appropriate cautionary instruction to the jury by the Court. *See Lewis*, 626 F.2d at 948.

For these reasons, the government should be allowed to use defendant's aforementioned convictions pursuant to Rule 609.

## **CONCLUSION**

Accordingly, the government respectfully requests that the Court permit at trial the introduction of its proffered intrinsic and extrinsic other crimes evidence and permit the government to impeach the defendant in with his prior convictions.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:  */s/ Joshua Gold*
JOSHUA GOLD
Tx Bar No. 24103101
CAMERON TEPFER
D.C. Bar No. 1660476
Assistant United States Attorneys
Federal Major Crimes Section
601 D Street, N.W.
Washington, D.C. 20530
(202) 815-8965
Joshua.Gold@usdoj.gov